KNOLL, Judge.
This appeal concerns terminating the parental rights of the father appellant, Ronnie Hartley. He appeals on two grounds: (1) the juvenile court erred in refusing to grant his motion for continuance; and (2) the juvenile court erred in concluding that the State proved by clear and convincing evidence that he is an unfit parent.
FACTS
On April 18, 1986, the State requested an instanter order of custody based upon information that the minor child, Jeff Hart-ley, date of birth, August 26, 1985, was in substantial immediate danger of injury. The information consisted of a physician’s medical examination which revealed several suspicious bruises on the infant’s head and neck, abrasions on the back of the head and chin, pneumonia and possible fractured ribs. The juvenile court granted the instanter order and a formal hearing was set for April 21, 1986. At the formal hearing the juvenile court determined that the infant was in need of care and granted temporary custody of the infant to the Louisiana Department of Health & Human Resources (DHHR). On October 28, 1987, the *67 court adjudicated the infant as an abandoned child and terminated the mother’s (Carolyn Sue Hartley) parental rights. The mother has not contested her termination of parental rights. The father, Ronnie Hartley, has lived almost exclusively in Indiana since the child was removed from the mother.
On February 26, 1988, the State instituted proceedings to terminate the parental rights of appellant, Ronnie Hartley, pursuant to LSA-R.S. 13:1601(B)(1). To substantiate its case, the State offered the appellant’s lack of interest in the child, his past alcohol and drug abuse, his frequent job changes and his prior criminal convictions as evidence of his unfitness. For the following reasons we affirm.
CONTINUANCE
Appellant, Ronnie Hartley, contends that the juvenile court erred in refusing to grant his motion for continuance.
LSA-C.C.P, Art. 1602 provides:
“A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.”
The mover for a continuance must show that his motion falls within the peremptory grounds set forth in LSA-C.C.P. Art. 1602. Roberson v. Cities Service Co., 478 So.2d 211 (La.App. 3rd Cir.1985).
The record reveals that the hearing to terminate parental rights was scheduled for April 27, 1988. Appellant filed his first motion for continuance on the eve of the hearing. The juvenile court granted the continuance and reset the matter for May 24,1988. Again, on the eve of the hearing, the appellant filed his second motion for continuance based upon information that the witness, Martha Hartley, was ill and unable to travel from Indiana to Louisiana. Concluding that the appellant failed to prove that Martha Hartley was a material witness, the juvenile court denied the motion.
After a careful review of the record, we conclude that the juvenile court did not err in denying the motion. Martha Hartley, the grandmother of Jeff Hartley, would purportedly testify that she would care for the child while the appellant was at work and also testify as to the suitability of her home for the child. Appellant fails to explain how this testimony is indispensable to the court in its decision whether to terminate his parental rights. While this testimony may be remotely relevant to the issue sub judice, we agree with the juvenile court’s conclusion that the testimony is not indispensable.
TERMINATION OF PARENTAL RIGHTS
Appellant next contends that the evidence presented was insufficient to establish by a clear and convincing standard that he is an unfit parent and that he shows no significant substantial indication of reformation and is unlikely to reform.
In the case sub judice, the State proceeded under 13:1601(B). To terminate parental rights, it requires:
“B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.”
These elements must be proven by clear and convincing evidence, LSA-R.S. 13:1603(A), and it must be proven that the best interests of the child require termination of the parental rights. LSA-R.S. 13:1602(D).
The record contains evidence that the child was adjudicated as a child in need of care on June 30, 1986, and the State was granted full custody of the minor child for a period of six months. In three subsequent six month hearings, the child re *68 mained in the custody of the State. On February 26, 1988, the State filed its Petition for Termination of Parental Rights.
As evidenced by the record, more than one year had elapsed between the child in need of care judgment and the filing of the petition to terminate Mr. Hartley’s parental rights. Therefore, this portion of the statute was satisfied.
Next, Subsection B(l) also requires the court find that the parent is unfit to rear the child. The evidence reveals that Mr. Hartley has shown little interest in the child. In April of 1986, because of physical abuse and neglect, the State requested and received an instanter order thereby removing the child from the mother’s custody. Over the next eighteen months, Mr. Hart-ley telephoned twice about the child and travelled from Indiana only once to visit the child. He sent only one payment for support during this time in the sum of $49.
In addition, Mr. Hartley has a history of both illegal drug abuse and alcohol abuse. In January of 1987, he was admitted for 30 •days to an alcohol treatment center for his substance abuse. Following his release, Mr. Hartley failed to complete the six month after-care program. Lastly, although the record contains no authentic evidence, Mr. Hartley does admit to military convictions of two counts of driving while intoxicated, one drug-related military conviction, and Indiana convictions for two counts of driving while intoxicated.
Following the removal of the child from the mother, state officials were eager to unite the child with Mr. Hartley. At the request of a Louisiana caseworker, Indiana officials conducted a home study of Mr. Hartley’s living arrangements and lifestyle and rejected his home as a suitable place for the child.
Based upon the aforementioned facts, we cannot' say that the juvenile court abused its discretion in concluding that Mr. Hart-ley is unfit to rear his child.
Lastly, the State must prove that the best interest of the child require termination of Mr. Hartley’s parental rights.
Pauline Walters, the case manager from the Office of Community Services, testified that Mr. Hartley agreed to a plan to unite him with his child. An agreement was perfected whereby Mr. Hartley would complete various tasks by certain dates with the final goal of gaining custody of his child. At first, Mr. Hartley was eager to comply with the terms of the agreement. But, over time Mr. Hartley failed to achieve most of his goals outlined in the agreement. In Mrs. Walters’ opinion, the home environment has not changed and placing the child with Mr. Hartley would not be in the best interest of the child.
In his reasons for judgment, the juvenile judge stated:
“This is indeed a tragic case. The court, or I as the organ of the court, am not unfamiliar with this case. I have heard numerous proceedings in this matter commencing with the initial removal of this child.... This case is tragic, has been tragic from its very beginning. Now, as to Mr. Hartley’s oh, fitness as a parent to rear the child, I really have nothing upon which to base a judgment in that regard other than Mr. Hartley’s conduct past and present. Now, I’m going to note and I’m going to recollect that during a period of many months subsequent to the initial removal of this child Mr. Hartley was so concerned about the welfare of his child and about the welfare of his wife who had simply stayed here in order to give two weeks notice to her then employer while Mr. Hartley journeyed to Indiana to complete employment arrangements with, by the way, his father as the employer, he was so concerned that he made arrangements to be sure that Mrs. Hartley could find a place to live and find a place to keep the child and could maintain herself in a position. Now, if I sound as though I’m being a bit facetious or a bit sarcastic indeed I am. The truth of the matter is Mr. Hartley made no effort that anybody was able to ascertain was being made in that respect. Contrary to his assertion here today, and this all sounded very nice, I took the two and a half year old and I went to Indiana so I could make *69 the employment arrangements. My wife had to give two weeks notice so she stayed here with the six and a half or seven month old child until she could give her two week notice, she was then to join me in Indiana. In the meantime the child was removed. The child was removed on the same day Mr. Hartley was here. And, Mr. Hartley did nothing at any of those times. Now, there’s perhaps an explanation, Mr. Hartley’s involvement with illegal controlled dangerous substances, Mr. Hartley’s involvement with alcohol to the extent that he was abusing that substance also. These are possible explanations for what he did then. I do not know whether Mr. Hart-ley was the abuser who initially inflicted the abuse on this child. I do know that the court was convinced clearly and convincingly that this child had been abused and that the welfare of this child required that the child be removed and placed in the custody of the Department and I do know by resort to the record as well as my own recollection that that was accomplished much more than one year ago. Now, what’s Mr. Hartley’s present circumstance? Reformation, is he now more fit to raise the child? At the time the Department in Indiana conducted a study of his then home, they were not of the opinion that he had done so and they would not approve his home for purposes of bringing this child into that home.
******
I personally feel that the Department has exerted every effort to reunite these parents and this child. When I make those assessments as to credibility and those little dates that appear to change from time to time during the course of the testimony and the equivocation that I appear to notice as we assess various segments of day to day conduct where Mr. Hartley is concerned, when I make those assessments I’m — I conclude that quite frankly Mr. Hartley was not and is not fit to rear this child and that although he has done some of the things that he should have done, enough to keep the probation officers off his back, he has not shown significant, substantial reformation nor a likelihood that he is going to significantly and substantially reform. Quite frankly, I suspect that the bulk of the positive movement that we have seen where Mr. Hartley was concerned was in response to the fact that he was on probation.
******
In short, I find that the State has carried its burden and that the rights should be terminated, parently [sic] rights should be terminated and that will be the judgment of the court.”
We conclude that because of Mr. Hartley’s lack of interest in the child, his history of illegal drug and alcohol abuse, and his inability to create a favorable environment for the child, we agree with the juvenile court’s conclusion that the State has proved by clear and convincing evidence that Mr. Hartley is an unfit parent, shows no significant substantial indication of reformation, and is unlikely to reform. The best interest of the child require termination of Mr. Hartley’s parental rights.
For the foregoing reasons, we affirm the judgment of the juvenile court. Costs of this appeal are assessed to Ronnie Hartley.
AFFIRMED.